W. GARY KURTZ, CSB # 57546
LAW OFFICES OF W. GARY KURTZ
2625 Townsgate Road, Suite 330
Westlake Village, CA 91361
Tel: (805) 449-8765; Cell: 805-796-6508
Email:  gary@wgarykurtzlaw.com

Attorneys for Plaintiff Darryl Payne

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| DARRYL PAYNE, an individual, | ) | Case No.  2: 18-cv-3413 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT FOR (1)** |
| v. | ) | **COPYRIGHT INFRINGEMENT;** |
| | ) | **(2) DECLARATORY RELIEF;** |
| | ) | **AND (3) INJUNCTIVE RELIEF** |
| BARRY MANILOW, an individual; | ) | |
| BARRY MANILOW | ) | |
| PRODUCTIONS, a business entity; | ) | |
| STILETTO ENTERTAINMENT, a | ) | **DEMAND FOR JURY TRIAL** |
| business entity; GARRY C. KIEF, an | ) | |
| individual; JUDY GARLAND | ) | |
| HEIRS' TRUST, a business entity; | ) | |
| and DOES 1 through 10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | | |

Plaintiff Darryl Payne ("Plaintiff" or "Payne") alleges as follows:

1

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND
(3) INJUNCTIVE RELIEF**

## NATURE OF ACTION

1.      Plaintiff brings this action seeking to put an immediate stop to, and to obtain redress for, Defendants' blatant, intentional, and purposeful infringement of plaintiff's copyright in one or more episodes of Plaintiffs' television series known as the Judy Garland Show (collectively, the "Infringed Work" or "Show").  Plaintiff is the sole owner of the separately registered copyrights for the territory of the United States of each of the twenty-six one-hour television episodes of the Infringed Work that were originally produced in 1963 and 1964 and broadcast nationwide by the CBS television network.

2.      This action states claims for copyright infringement, declaratory relief, injunctive relief and damages against defendants Barry Manilow ("Manilow"), Barry Manilow Productions ("Productions"), Stiletto Entertainment, ("Stiletto"), Garry C. Kief ("Kief"), and the Judy Garland Heirs' Trust ("Trust"). Plaintiff is informed and believes that said Defendants were fully aware of the wrongful nature of their conduct but repeatedly infringed upon Plaintiff's copyright during the three-year period immediately preceding the filing of this Complaint.

3.      Plaintiff is informed and believes that both Kief, as Trustee of the Trust, and the Trust, while knowing that they did not own or have any rights whatsoever to the Infringed Work, illegally licensed to or otherwise authorized use of the audio-video clips from the Infringed Work by Stiletto and/or Productions and/or Manilow for the purpose of allowing Manilow to record and/or promote his album "My Dream Duets."  Payne is

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

informed and believes that (1) defendants Manilow, Productions, Stiletto, and Kief created a promotional video for the My Dream Duets album that utilized the audio-video performances embodied in the Infringed Work, including, without limitation, the performance by Judy Garland of the song "Zing! Went the Strings of My Heart"; and (2) Manilow utilized the audio-video clips during his live concert performances. Manilow's performance of the duets with Judy Garland at Manilow's concerts was achieved by displaying either projections or digital replications of the audio-video clips from the Infringed Work on a large screen that the audience could view and listen to while Manilow performed live on stage interacting with the exhibition of the Infringed Work.

4.      Plaintiff is further informed and believes that Kief, as Trustee of the Trust, Chief Executive Officer ("CEO") of Stiletto, President of Productions and the husband and manager of Manilow, orchestrated the illegal licensing of or the improper authorizations to use the Infringed Work and the exploitation of the same by Manilow in his concerts. During the three-year period immediately preceding the filing of this Complaint, Payne is informed and believes that defendants infringed on the copyright on approximately 68 separate occasions, each before an arena audience of approximately 15,000 to 20,000 persons.

5.      On or about June 3, 2016, Kief and the Trust, in furtherance of their efforts to deprive Payne of his copyright interest in the Infringed Work, caused a separate Notice of Termination to be recorded in the United States Copyright Office concerning each of

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

the 26 episodes of the Show. Each such Notice states that it is based on 17 U.S.C. section 203 and purports to terminate Payne's copyright in each episode of the Show effective June 1, 2018. Each such Notice is without legal effect in that (1) the Infringed Work was a "work made for hire," (2) the Infringed Work was produced before 1978; and (3) the Notice was not timely filed. However, each such Notice demonstrates Defendants' guilty knowledge that at the time they licensed or exhibited the Infringed Work they did not have the right to do so. Moreover, and importantly, each such Notice disparages Plaintiff's ownership of the copyrights and significantly impairs Plaintiff's ability to market and promote the Infringed Work.

6.      In addition to its claim for copyright infringement, Payne seeks a declaration that he is the sole owner of the copyright to the Infringed Work and that defendants, and each of them, have no interest in the Infringed Work and lack the authority to exploit the same. Further, Plaintiff seeks injunctive relief to stop further infringement on Plaintiff's copyright and to prevent further disparagement of plaintiff's title to the Infringed Work.

## JURISDICTION AND VENUE

7.      The within Complaint is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101, et seq.

8.      This Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

9.      This Court has personal jurisdiction over Defendants because, among other things, Defendants are doing business in the State of California and in this judicial district, the acts of infringement complained of herein occurred in the State of California and this judicial district, and Defendants have caused injury to Plaintiffs and their intellectual property within the State of California and in this judicial district.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), and/or § 1400(a).

## THE PARTIES

11.     Darryl Payne, a well-known multiple Billboard Music Award-winning music producer and is the owner and producer of audio and video recordings of performances by many major recording artists. Additionally, he is the owner of the legal and/or beneficial interest in the copyrights to the Infringed Work.

12.     Plaintiff is informed and believes that defendant Manilow is a world-renowned composer, singer and recording artist who frequently tours the United States to perform before arena audiences of approximately 15,000 to 20,000 people. Plaintiff is informed and believes that Manilow resides in California and is the husband of defendant Kief.

13.     Plaintiff is informed and believes that defendant Barry Manilow Productions is a business entity of unknown form doing business in the State of California that is

5

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

owned, in whole or in part, by defendant Manilow. Plaintiff is informed and believes that Productions is responsible for the production of Manilow's concert tours.

14.     Plaintiff is informed and believes that defendant Kief is an individual residing in California and is Manilow's husband, Manilow's manager, the President of Productions, the CEO of Stiletto, and the Trustee of the Trust.

15.     Plaintiff is informed and believes that defendant Stiletto Entertainment is a business entity of unknown form that acts as a manager for Manilow and, in said capacity, arranges for the licensing of or obtaining clearances for the music performed by and the video recordings exhibited by Manilow during his concerts.  Plaintiff is informed and believes that Stiletto is owned or controlled by Kief.

16.     Plaintiff is informed and believes that the Trust was formed by or on behalf of the children of the late entertainer Judy Garland (i.e., Liza Minelli, Lorna Luft and Joey Luft) to exploit the assets of Judy Garland's estate, including the licensing of video and audio recordings of her work. Plaintiff is unaware of the role, if any, of said children in the control or business operations of the Trust.

17.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as Does 1 through 10, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names (the "Doe Defendants"). Plaintiffs will seek leave of Court to amend this complaint to state their true names and capacities when they have been ascertained.

6

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

18.     Plaintiffs are informed and believe and, on that basis, aver that the Doe Defendants are liable to Plaintiffs as a result of their participation in all or some of the acts hereinafter set forth. Manilow, Productions, Stiletto, Kief, the Trust and the Doe Defendants are referred to collectively herein as "Defendants."

19.     Plaintiffs are informed and believe and, on that basis, aver that at all times mentioned in this complaint, each of the Defendants was the agent and/or alter ego of each of the other Defendants and, in doing the things alleged in this complaint, was acting within the course and scope of such agency.

## FACTS COMMON TO ALL CLAIMS

### Copyright Chain of Title

20.     In or about 1962, the CBS Television Network entered into a contract with Kingsrow Enterprises, Inc. to produce a television series starring Judy Garland. Plaintiff is informed and believes that Kingsrow, in turn, entered into a work made for hire agreement with Judy Garland to perform on the Show.  In 1963 and 1964, twenty-six one-hour episodes of the Show were produced, with most featuring a guest star. A description of each episode including the original copyright registration number and the copyright renewal number is attached hereto as Exhibit A and incorporated herein by this reference.

21.     Plaintiff is informed and believes that subsequent to the cancellation of the Show in 1964, Sidney Luft ("Luft"), the husband of Judy Garland, acquired ownership of

7

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

the Infringed Work when Kingsrow on December 26, 1979 assigned some or all of its interest in the Show to Luft.  Between 1990 and 1992, Luft renewed the copyright registrations for each episode of the Infringed Work. (See Exhibit A hereto.) In said registration renewals, Luft claimed ownership of each episode of the Infringed Work as the "Proprietor of Copyright in a work made for hire."

22.     On July 1, 1997, Luft and Kingsrow transferred all of their respective interests in the Show to Luft's wholly owned company, Celebrity Music Company, Inc. ("Celebrity Music"). On July 7, 1997, Celebrity Music sold all its interest in the Infringed Work with respect to the territory of the United States to Classic World, Inc., an Illinois corporation ("Classic World"). Classic World was wholly owned and controlled by Plaintiff Payne. Classic World paid approximately $960,000 for the rights to the Show.

23.     After Classic World's acquisition of its ownership interest in the Infringed Work, it entered into an agreement (hereinafter, the "Purchase Agreement") to sell all of its rights in the Show to Cakewalk Productions, Inc. ("Cakewalk").

24.     In the meantime, Luft filed suit in the United States District Court for the Southern District of New York against Payne, Classic World and Cakewalk (Case No. 1:98-cv-04932-LAP ("New York Action") in an attempt to reclaim title to the Infringed Work.  The parties filed various Counterclaims and Cross-Claims.  On October 28, 1998, Chief Judge Loretta A. Preska of the Southern District of New York, ordered Luft to

8

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

deliver the proposed copyright assignment conveying all U.S. rights to the Judy Garland Show to Cakewalk Productions, Inc. and to deliver the master recordings to it.

25.    On March 1, 1999, a further order by Chief Judge Preska was issued ordering

> "that Luft and each of his respective subsidiaries, affiliates, related entities, assigns, etc., are enjoined from claiming, publicizing or otherwise communicating to anyone other than his attorneys in private that he is the lawful owner of the copyrights set forth in Exhibit A ('The Rights' [to the Infringed Work]), or interfering with CPI's [Cakewalk's] exercise of The Rights; from making any statement to the effect that during the applicable time any entity other than CPI [Cakewalk] was the rightful owner of The Rights; from asserting claims, including legal action, against any entity for infringement of The Rights."

26.    On July 30, 1998, pursuant the Purchase Agreement as modified by a partial settlement agreement approved by order of Chief Judge Preska in the NY Action, Classic World transferred and assigned to Cakewalk solely for the territory of the United States, 100% of its interest in the Show, excluding DVD, theatrical rights and clip rights.

27.    A final Settlement Agreement between Cakewalk and Classic World was executed on May 5, 1999, pursuant to which Cakewalk granted to Classic World "exclusive video rights" (i.e., the combination of the audio and visual elements of the

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

Show), exclusive broadcast rights and exclusive clip rights (subject to limited exceptions not applicable here). The audio rights only (i.e., the sound recordings when not used in conjunction with visual elements of the video) were retained by Cakewalk.

28.     The net result of the transactions between Classic World and Cakewalk was that Classic World retained the video rights (i.e., the audio and visual elements) for the Infringed Work for the United States. Cakewalk retained only the right to exploit the original audio tracks (i.e., the sound recordings when not used in conjunction with the visual elements of the video for the Infringed Work) contained on the master recordings.

29.     The District Court entered judgment on July 28, 1999 ordering, in part, that the Complaint filed by Luft be "dismissed with prejudice." On February 28, 2000, in connection with a contempt citation for violation of the court's prior orders, Chief Judge Preska ordered Luft to deliver the assignments conveying all United States rights to the Infringed Work to Cakewalk by a date certain and imposed a $10,000 a day fine for each day that he failed to comply. Luft complied with said Order. Finally, on March 7, 2000, in the New York Action, Luft was ordered to withdraw any claim of ownership to the copyrights for the Infringed Work that he had asserted in a separate action known as *Luft v. Miramar* then pending in the United States District Court for the Central District of California.

30.     After the entry of Judgment, Payne engaged and paid a third-party engineering company approximately $350,000 to digitize the master videotapes of the

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

Show and to enhance both the audio and visual elements of the video recordings ("Enhanced Recordings") of the Show.

31.     Classic World filed for Chapter 7 Bankruptcy in 2005, and in 2006, Payne filed for personal bankruptcy.

32.     On August 19, 2008, in the Classic World bankruptcy, the court authorized the bankruptcy trustee in Classic World's bankruptcy to abandon **all** the assets of Classic World, including the copyrights to the Show and the "Video Master Collections of Judy Garland television show masters." It further ordered, "that entry of this Order shall be deemed to constitute the abandonment of said property by the Trustee."

33.     On May 8, 2009, the bankruptcy court for Payne's personal bankruptcy ordered the Bankruptcy Trustee to abandon in favor of Payne all of Payne's interest in the stock of Classic World.

34.     On May 9, 2009, Classic World assigned all its assets to Payne. Consequently, Plaintiff personally owns the Infringed Work and all associated rights in the United States for their exploitation except for the audio-only tracks of the performance of musical compositions.

**Acts of Infringement**

35.     Plaintiff is informed and believes that defendant Manilow created in 2014 a sound recording for an album entitled "My Dream Duets," that incorporates portions of the Enhanced Recordings audio tracks taken from the Show. In connection with the

11

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

promotion of the "My Dream Duets" album, Plaintiff is informed and believes, the

Defendants created a video ("Promotional Video") that is linked to the official website of

Barry Manilow. Plaintiff is further informed and believes said video incorporates

performances by Manilow with the audio-video clips of the Show that include

performances by one or more artists including, without limitation, Judy Garland singing

"Zing! Went the Strings of my Heart," extracted from the Enhanced Recordings of

episodes 10 (Copyright Registration No. LP0000027589; Renewal Registration No.

RE0000561830) and/or 14 (Copyright Registration No. LP0000027593; Renewal

Registration No. RE0000561834) of the Infringed Work. Plaintiff is informed and

believes that thousands of members of the public have accessed said link and viewed the

Promotional Video during the three-year period immediately preceding the filing of the

Complaint in this matter and, as a consequence of the viewing of the Promotional Video,

purchased in CD format or for downloading or streaming the sound recordings contained

in the My Dream Duets album. The Promotional Video, which infringes on Plaintiff's

copyright, may be viewed at the following link:

https://www.youtube.com/watch?v=rC2BFYD931U&list=PLu1c0oXJ2zPq3axibaRPMg-
rPVxtkXTHK&index=2

36.     Plaintiff is informed and believes that within the three-year period

immediately preceding the filing of this Complaint, Kief, acting in his capacity as Trustee

of the Trust, purported to license to or otherwise authorized the use of one or more

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND
(3) INJUNCTIVE RELIEF**

Enhanced Recordings clips of the Infringed Works by the remaining defendants for exploitation as part of Barry Manilow's concert performances.

37.     Plaintiff is informed and believes that Defendants incorporated elements of the Infringed Work into live performances by Manilow during concerts performed in the United States during the three-years immediately preceding the filing of this Complaint.

38.     Plaintiff is informed and believes that Kief and  the Trust, knowingly, willfully, intentionally and purposefully, in disregard of and with indifference to Plaintiff's rights in the Infringed Work, illegally licensed to or otherwise authorized the use of clips from the Infringed Work by Stiletto and/or Productions and/or Manilow for the purpose of allowing Manilow to sing duets at his concerts with one or more of the stars appearing on the Infringed Work, including without limitation, Judy Garland. The performance of the duets was achieved by displaying either projections or digital replications of the Enhanced Recordings clips from the Infringed Work on a large screen that the audience could view Judy Garland's performance and listen to the synced sound recording of said performance while Manilow performed live on stage interacting with the exhibition of the Infringed Work.

39.     Plaintiff is further informed and believes that Kief, as Trustee of the Trust, Chief Executive Officer of Stiletto, President of Productions and the husband and manager of Manilow, orchestrated the illegal licensing or authorization of the use of the Infringed Work by Manilow in his concerts. Payne is informed and believes that

13

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

Defendants during the three-year period immediately preceding the filing of this Complaint infringed on the copyright on approximately sixty-eight (68) separate occasions, each before an arena audience of about 15,000 to 20,000 ticket holders. Examples of a few of the many performances can be viewed on youtube.com at the following addresses:

> https://www.youtube.com/watch?v=c44QO0Lrbi8
>
> https://www.youtube.com/watch?v=8yHiSLQ3zQQ
>
> https://www.youtube.com/watch?v=ipZcXtPh5RA

### Disparagement of Title

40.     On or about June 3, 2016, Kief and the Trust, in furtherance of their efforts to deprive Payne of his copyright interest in the Infringed Work, caused a Notice of Termination of Rights to be recorded in the United States Copyright Office purportedly based on 17 U.S.C. section 203 with respect to each of the 26 episodes of the Show (collectively, the "Notice").  (See Schedule of Termination Notices attached hereto as Exhibit B and incorporated herein by this reference.) The Notice purports to terminate Payne's copyrights in the Infringed Work effective June 1, 2018. The Notice is without legal effect in that it does not satisfy the statutory requirements for a termination of rights because, among other reasons, (1) the Infringed Work was a "work made for hire," (2) the Infringed Work was produced prior to 1978; and (3) the Notice was not timely filed. The Notice does, however, demonstrate Defendants' guilty knowledge that at the time

14

they licensed or otherwise authorized the use and exhibition of the Infringed Work as

alleged in paragraphs 35 through 39 of this Complaint, they did not have the right to do

so.

## COUNT I

## COPYRIGHT INFRINGEMENT

### (17 U.S.C. §§ 106 and 501)

### (By Plaintiff Against Defendants)

41.     Plaintiff incorporates herein by this reference each and every averment

contained in paragraphs 1 through 40, inclusive.

42.     Through their conduct averred herein, Defendants have infringed Plaintiff's

copyright in the Infringed Work in violation of Sections 106 and 501 of the Copyright

Act, 17 U.S.C. §§ 106 and 501.

43.     Defendants' acts of infringement are willful, intentional and purposeful, in

disregard of and with indifference to Plaintiff's rights.

44.     As a direct and proximate result of said infringement by Defendants,

Plaintiff is entitled to damages in an amount to be proven at trial.

45.     Plaintiff is also entitled to Defendants' profits attributable to the

infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a

constructive trust with respect to such profits.

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

46.     In the alternative, plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

47.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

48.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiffs are informed and believe and, on that basis, aver that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Infringed Work. Plaintiffs are entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT II

## DECLARATORY RELIEF

## (28 U.S.C. §§ 2201 and 2202)

### (By Plaintiff against Kief and the Trust)

49.     Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 40, inclusive.

50.     Plaintiff is informed and believes and, on that basis, alleges that on or about June 3, 2016, defendants Kief and the Trust caused pursuant to 17 U.S.C. section 203 a Notice of Termination of Transfer of Rights ("Notice") to be recorded with the United

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

States Copyright Office and purportedly served on the grantees with respect to Judy Garland's alleged grant of rights to Kingsrow in 1963 and 1964. The Notice states that the termination of rights is to be effective on June 1, 2018. (See Exhibit B.)

51.     Section 203 of the Copyright Act permits (except for works made for hire) authors (or, if the authors are not alive, their surviving spouses, children or grandchildren, or executors, administrators, personal representatives or trustees) to terminate grants of copyright assignments and licenses that were made on or after January 1, 1978 when certain conditions have been met. Notices of termination may be served no earlier than 25 years after the execution of the grant or, if the grant covers the right of publication, no earlier than 30 years after the execution of the grant or 25 years after publication under the grant (whichever comes first). However, termination of a grant cannot be effective until 35 years after the execution of the grant or, if the grant covers the right of publication, no earlier than 40 years after the execution of the grant or 35 years after publication under the grant (whichever comes first).

52.     Plaintiff is informed and believes that Kief and the Trust contend that the recordation and service of the Notice of Termination of Transfer of Rights terminate effective June 1, 2018, the rights held by Payne as the assignee of the rights originally granted to Kingsrow. Plaintiff disputes said contentions.

53.     Plaintiff contends that the Notice is without legal effect because, among other things, (1) the Infringed Work was a work made for hire; (2) the Notice was not

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

filed within the statutory period; and (3) Section 203 of the Copyright Act only applies to works created after 1978 and the Show was created in 1963 and 1964. Plaintiff is informed and believes that Kief and the Trust dispute said contentions.

54.     An actual controversy exists between Payne, on the one side, and Kief and the Trust, on the other side. By the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. sections 2201 and 2202, this court is vested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## COUNT III

### (Injunctive Relief)

### (Against Kief and the Trust)

55.     Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 33, and 50 through 54, inclusive.

56.     Defendant Keif's and the Trust's efforts to terminate plaintiff's copyright and their conduct in purportedly licensing or authorizing the use of the Infringed Work have cause and will continue to cause great and irreparable injury to Plaintiff. Such conduct by said defendants casts doubt on the ownership of the copyright to the Show and greatly impairs the ability of Plaintiff to market the Infringed Work.

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

57.    Plaintiff is informed and believes that unless ordered not to do so by this Court, Keif and the Trust will continue to disparage Plaintiff's title to the Infringed Work and will adversely impact Payne's ability to exploit the Infringed Work.

58.    Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff.

59.    Plaintiff has no adequate remedy at law for the injuries currently being suffered in that the Recording of the Notices of Termination with the United States Copyright Offices disparages Plaintiff's title to the Infringed Work and will discourage potential customers from doing business with Payne regarding the Infringed Work. Moreover, it will be impossible for Plaintiff to determine the precise amount of damage which he will suffer if defendants' conduct is not restrained and Keif and the Trust are not ordered to withdraw the Notices and cease claiming ownership of the Infringed Work.

60.    Plaintiff requests that the Court issue a preliminary and permanent injunction that Kieth and the Trust and each of their respective subsidiaries, affiliates, related entities, assigns, agents and successors in interest be (1) enjoined from claiming, publicizing or otherwise communicating to anyone other than their respective attorneys in private that the Trust is the lawful owner of the copyrights set forth in Exhibit A ("The Rights") or interfering with Payne's exercise of The Rights; from making any statement to the effect that any entity or individual other than Payne was or is the rightful owner of The Rights; from asserting claims, including legal action, against any entity for

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

infringement of The Rights; and (2) ordered to withdraw each Notice of Termination recorded by them with the United States Copyright Office with respect to the Infringed Work identified in Exhibit A to this Complaint.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, jointly and severally, as follows:

**On the First Count:**

1.    For damages in such amount as may be found, or as otherwise permitted by law.

2.    For an accounting of, and the imposition of a constructive trust with respect to, Defendants' profits attributable to their infringements of Plaintiffs' copyright in the Infringed Composition.

3.    For a preliminary and permanent injunction prohibiting Defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from continuing to infringe Plaintiffs' copyright in the Infringed Composition.

**On the Second Count:**

4.    A declaratory judgment that Payne is the sole owner of the copyright to the audio-video recordings of the Judy Garland Show television series for the United States except with respect to the audio-only tracks of the music performed on said show and that

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

the recording of the Notice of Termination of Rights is void and without legal force or effect.

**On the Third Count:**

5.      For a preliminary and permanent injunction that defendants Keif and the Trust and each of their respective subsidiaries, affiliates, related entities, assigns, agents and successors in interest be (1) enjoined from claiming, publicizing or otherwise communicating to anyone other than their respective attorneys in private that the Trust is the lawful owner of the copyrights set forth in Exhibit A ("The Rights") or interfering with Payne's exercise of The Rights; from making any statement to the effect that any entity or individual other than Payne was the rightful owner of The Rights; from asserting claims, including legal action, against any entity for infringement of The Rights; and (2) ordered to withdraw each Notice of Termination recorded by them with the United States Copyright Office with respect to the Infringed Work identified in Exhibit A to this Complaint.

**On all Counts:**

6.      For prejudgment interest according to law.

7.      For Plaintiffs' reasonable attorneys' fees, costs, and disbursements in this action as permitted or required by law or equity.

//

//

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

8.      For such other and further relief as the Court may deem just and proper.

DATED:  April 23, 2018                    W. GARY KURTZ
                                          LAW OFFICES OF W. GARY KURTZ

                                          /s/ W. Gary Kurtz
                                          _____
                                                W. GARY KURTZ
                                          Attorney for Plaintiff Darryl Payne

22

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**

## DEMAND FOR JURY TRIAL

Plaintiff Darryl Payne hereby demands a trial by jury on all claims so triable.

DATED: April 23, 2018    W. GARY KURTZ
             LAW OFFICES OF W. GARY KURTZ

             /s/ W. Gary Kurtz

           _____
             W. GARY KURTZ
           Attorney for Plaintiff Darryl Payne

23

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT; (2) DECLARATORY RELIEF; AND (3) INJUNCTIVE RELIEF**