UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** **The Court GRANTS the Defendants' three motions to dismiss and DENIES Plaintiff's motion for preliminary injunction**

Before the Court are (1) a motion to dismiss filed by Defendants Live Nation Entertainment, Inc. ("Live Nation") and the Madison Square Garden Company ("MSG") (collectively the "Live Nation Defendants"), *see* Dkt. # 60 ("*Live Nation Mot.*"); (2) a motion to dismiss filed by Defendants AEG Live, LLC and AEG Live Productions, LLC (collectively the "AEG Defendants"), *see* Dkt. # 82 ("*AEG Mot.*"), and (3) a motion to dismiss filed by Defendant National Academy of Recording Arts & Sciences, Inc. ("Academy"), *see* Dkt. # 62 ("*Academy Mot.*").  Plaintiff Darryl Payne ("Plaintiff") has opposed each of the motions to dismiss, *see* Dkts. # 91 ("*Live Nation Opp.*"), 93 ("*AEG Opp.*"), 92 ("*Academy Opp.*"), and the Defendants replied, *see* Dkts. # 95 ("*Live Nation Reply*"), 96 ("*AEG Reply*"), 98 ("*Academy Reply*").

Also before the Court is Plaintiff's motion for a preliminary injunction.  *See* Dkt. # 66 ("*PI Mot.*").  Defendants Garry Kief, the Judy Garland Heirs' Trust, Liza Minelli, Lorna Luft, and Joseph Luft (collectively the "Trust Defendants") have opposed the motion, *see* Dkt. # 90 ("*PI Opp.*"), and Plaintiff replied, *see* Dkt. # 97 ("*PI Reply*").

The Court finds the matters appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  Having considered the moving papers, the Court **GRANTS** the three motions to dismiss and **DENIES** the motion for preliminary injunction.

I.    Background

Plaintiff Darryl Payne alleges that he owns the copyrights for the Judy Garland Show ("Show"), a famous television show that aired in the 1960s.  *Fourth Amended Complaint*, Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

# 45 ("*4AC*"), ¶ 1. He claims that he acquired ownership of the copyrights through the following chain of title. In 1962, CBS Television Network entered into a contract with Kingsrow Enterprises, Inc. ("Kingsrow"), Judy Garland's wholly owned company, to produce the Judy Garland Show. *Id.* ¶ 31. Twenty-six episodes were produced and broadcasted on CBS from September 1963 through March 1964. *Id.* ¶¶ 31, 41. At some point between 1968 and 1979, Garland (or alternatively, Kingsrow) allegedly transferred all of the interests in the Show to Michael Sidney Luft ("Luft"), her husband. *See* ¶¶ 43–44.

On July 1, 1997, Luft transferred his interests to Luft's wholly owned company, Celebrity Music Company Inc. ("Celebrity"). *Id.* ¶ 45. On July 7, Celebrity sold all of its interests in the Show within the United States for $960,000 to Classic World, Inc. ("Classic World"), a company wholly owned and controlled by Plaintiff. *Id.* ¶ 46. After a series of transactions, lawsuits, and bankruptcy proceedings, Plaintiff ultimately obtained ownership of the Show's copyrights in the United States, except for the copyrights for the audio-only tracks. *Id.* ¶¶ 47–58.

In 2014, Defendant Barry Manilow, a world-renowned composer, singer, and recording artist, created a sound recording for an album entitled "My Dream Duets," which incorporated an audio track from the Show of Judy Garland singing. *Id.* ¶ 59. Plaintiff alleges that Manilow, along with the rest of the Defendants, infringed on his audio-visual copyrights for the Show by making available a promotional video for the album that included clips of the Show and projecting the clips during Manilow's concert performances in the United States. *See id.* ¶¶ 59, 61. These concerts were promoted by the AEG Defendants. *Id.* ¶ 4. Moreover, one of the venues at which Manilow held his concerts was owned by Defendant MSG and operated by Defendant Live Nation. *Id.* Finally, Plaintiff alleges that Manilow used clips from the Show as part of his performance at the pre-awards party hosted by Defendants Davis and the Academy at the 2016 Grammy Awards. *See id.* ¶ 64.

On June 3, 2016, the Trust Defendants, including Garland's heirs, recorded a Notice of Termination with the U.S. Copyright Office under 17 U.S.C. § 203, seeking to reclaim the copyrights to the Show. *Id.* ¶ 67. The Termination Notice purported to terminate Plaintiff's ownership of the copyrights effective June 1, 2018. *See id.* Plaintiff alleges that his business plans to monetize the show's copyrights have been disrupted by the recording of this Termination Notice. *PI Mot.* 22:18–20.

Plaintiff commenced this suit in April 2018. *See* Dkt. # 1. After several rounds of amendments, Plaintiff's Third Amended Complaint ("TAC") alleged the following claims:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

First Cause of Action: Copyright Infringement (against Barry Manilow, Barry Manilow Productions, Stiletto Entertainment (collectively the "Manilow Defendants") and the Trust Defendants). *Third Amended Complaint*, Dkt. # 35, ¶¶ 57–64.

Second Cause of Action: Contributory and Vicarious Copyright Infringement (against the AEG Defendants). *Id.* ¶¶ 65–69.

Third Cause of Action: Contributory and Vicarious Copyright Infringement (against Clive Davis and the Academy). *Id.* ¶¶ 70–74.

Fourth Cause of Action: Contributory and Vicarious Copyright Infringement (against Live Nation and MSG). *Id.* ¶¶ 75–79.

Fifth Cause of Action: Declaratory Relief (against the Trust Defendants). *Id.* ¶¶ 80–85.

Sixth Cause of Action: Injunctive Relief (against the Trust Defendants). *Id.* ¶¶ 86–91.

Seventh Cause of Action: Slander of Title (against the Trust Defendants). *Id.* ¶¶ 92–100.

On October 29, 2018, the Court granted the Manilow Defendants and Trust Defendants' motion to dismiss the TAC for failure to state a claim. *See Motion to Dismiss Order*, Dkt. # 44 ("*MTD Order*"). In it, the Court concluded that Plaintiff had adequately alleged the copyrights' chain of title. *See id.* at 10. However, it ultimately dismissed the TAC, concluding that Plaintiff failed to sufficiently allege that the Trust Defendants' Notice of Termination was invalid. *See id.* at 11. In his motion, Plaintiff argued that the Termination Notice was without legal effect, because as a "work made for hire," the Show was not subject to termination under 17 U.S.C. § 203. *See id.* Because the TAC lacked any factual allegations to support Plaintiff's assertion that the Show was a work made for hire and therefore exempt from Termination Notices, the Court concluded that the Plaintiff failed to state a claim against the Manilow Defendants and the Trust Defendants. *See id.* As such, the TAC was dismissed with leave to amend. *See id.* at 14. On November 7, 2018, Plaintiff filed a Fourth Amended Complaint ("4AC"), realleging the same causes of action alleged in the TAC. *See 4AC*.

The AEG Defendants, the Live Nation Defendants, and the Academy now move to dismiss Plaintiff's 4AC for failure to state a claim under Federal Rule of Civil Procedure

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

12(b)(6).[1]  *See generally AEG Mot.*; *Live Nation Mot.*; *Academy Mot.*  Plaintiff moves for a preliminary injunction, asking the Court to order the Trust Defendants to withdraw the Termination Notice filed with the U.S. Copyright Office and enjoin and restrain them from further violating the copyrights at issue.  *See generally PI Mot.*

II.     Legal Standard

  A.     Motion to Dismiss

     To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff.  *See Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

  B.     Motion for Preliminary Injunction

     A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (quotation marks and citation omitted); *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).  A party seeking a preliminary injunction must make a "clear showing" of each of the following elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) an advancement of the public interest.  *See id.* at 20, 22.  A preliminary injunction may also be appropriate "when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," so long as the other *Winter* factors are met.  *See Alliance for the Wild Rockies*

---

[1] The Manilow Defendants, Trust Defendants, and Defendant Davis have answered the 4AC. *See* Dkts. # 50–52, 79

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

*v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (citation and modification omitted) (allowing for a post-*Winter* "sliding scale" analysis in preliminary injunction inquiries where "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another"). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

A court is permitted to consider inadmissible evidence in deciding a motion for a preliminary injunction. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). This is because "[t]he urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult for a party to procure supporting evidence in a form that would be admissible at trial." *Id.* "While district courts may consider inadmissible evidence in the context of a preliminary injunction, this does not mean that evidentiary issues have no relevance to this proceeding. Such issues, however, properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

III.     Discussion

The Court first addresses the motions to dismiss and then moves on to the motion for preliminary injunction.

   A.     Motions to Dismiss

The AEG Defendants, Live Nation Defendants, and the Academy (collectively the "MTD Defendants") all raise similar arguments for why Plaintiff's claims against them should be dismissed for failure to state a claim. First, they contend that Plaintiff cannot state a claim for contributory or vicarious copyright infringement because he cannot state a claim for direct copyright infringement. Second, they argue that Plaintiff's allegations are too conclusory to meet the pleading standards. The Court addresses each argument in turn.

         i.     *Direct Copyright Infringement*

First, the MTD Defendants argue that Plaintiff cannot state a claim for contributory or vicarious copyright infringement, because the 4AC fails to allege direct copyright infringement, a necessary element for any type of secondary liability. *See Fusion Windows and Doors, Inc. v. Am. Reliable Windows, Inc.*, CV 13-1022 PSG (JCx), 2013 WL 12126108, at *5 (C.D. Cal. July

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

12, 2013) (dismissing secondary copyright infringement claims in absence of direct copyright infringement); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").

The Court previously granted Plaintiff leave to amend the TAC to support factually his allegation that the Show was a work made for hire. *See MTD Order* at 11. If Plaintiff could demonstrate that the Show was a work made for hire, the Court reasoned, the Trust Defendants' Termination Notice sent to Plaintiff may not have any legal effect. *See id.* In the 4AC, Plaintiff supplemented the pleading with additional facts to support his claim that the Show was a work made for hire. However, the MTD Defendants contend that these additions are not enough to state a claim for copyright infringement. *See AEG Mot.* 5:22–7:3; *Live Nation Mot.* 4:13–5:26; *Academy Mot.* 3:16–27.[2]

In the 4AC, Plaintiff points to a production agreement between Kingsrow and CBS for the Show, which is attached to the pleading and alleges that Garland, "in a signed writing, . . . granted her copyright interest in the Show to Kingsrow[.]" *4AC* ¶ 69. The MTD Defendants argue that the agreement itself belies Plaintiff's allegation that the Show was a work made for hire because it lacks any language indicating that Garland signed away any of her rights or that it created a work for hire arrangement. *See AEG Mot.* 6:24–25. Rather, the MTD Defendants contend that Garland merely signed the agreement *on behalf of* Kingsrow, a company she wholly owned. *Id.* 6:20–21. The Court agrees that the contract that Plaintiff includes in his 4AC does not itself establish that Garland was an employee of Kingsrow or that the Show was a work made for hire. But neither does it conclusively show that Garland was *not* an employee of Kingsrow.

In their motions, the MTD Defendants largely ignore the additional allegations Plaintiff sets forth in the 4AC to support his theory that Garland was an employee of Kingsrow, making the Show a work made for hire. For example, the 4AC alleges that Garland acted as an employee of Kingsrow because "at the time of her performance on the Show, [Garland] did not control Kingsrow's operations, business decisions, the production of the Show, or the financial resources of Kingsrow, all such authority having been fully vested in Fields and Begelman." *4AC* ¶ 70. Further, the 4AC alleges that Garland's services "were to be performed over an extended period on a nearly full-time basis, using facilities provided by Kingsrow and/or CBS"

---

[2] Because the arguments made in the three motions are identical, the Court only cites to one motion moving forward.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

and that Kingsrow paid Garland "a salary of approximately $30,000 per episode of the Show." *See id.* These allegations, if true, could *plausibly* establish that Garland was an employee of Kingsrow and that the Show was a work made for hire.

Therefore, the MTD Defendants' argument Plaintiff cannot state a claim for secondary liability because there is no underlying direct infringement fails.

       *ii.*     *Contributory Copyright Infringement*

In order to establish that a party is contributorily infringed on a copyright, a plaintiff must show that the defendant "(1) ha[d] knowledge of a third party's infringing activity, and (2) induce[d], cause[d], or materially contribute[d] to the infringing conduct." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). To satisfy the knowledge requirement, a plaintiff must demonstrate more than "a generalized knowledge" of a possibility of infringement. Rather, a plaintiff must be able to show that the defendant had "actual knowledge of specific acts of infringement[.]" *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013).

Here, Plaintiff's allegations of the MTD Defendants' knowledge and inducement are wholly conclusory. He merely pleads that the AEG Defendants, Live Nation Defendants, and the Academy all had "knowledge" that Manilow was displaying infringing work at the performances and that they "knowingly induced, participated in, aided and abetted, and resultantly profited from the illegal exhibition of the Show at the performance by Manilow." *4AC* ¶¶ 4, 82, 87, 92. Such "threadbare recitals" of the elements of the cause of action, without specific factual allegations, are insufficient to plausibly state a claim. *See Iqbal*, 556 U.S. at 678; *see also Epikhin v. Game Insight N. Am.*, No. 14-cv-04383-LHK, 2015 WL 2412357, at *4 (N.D. Cal. May 20, 2015) (granting a motion to dismiss where the plaintiff alleged no facts in support of the "threadbare assertion" that the defendants "had knowledge of the infringing acts" and had "induced, caused, and materially contributed to the infringing acts of others"); *Luvdarts*, 710 F.3d at 1072 (affirming dismissal of complaint containing "conclusory allegations that the [defendants] had the required knowledge of infringement").

In opposition, Plaintiff insists that the 4AC satisfies the pleading requirements, because "[w]hile the facts alleged may be sparse, judicial experience, common sense and judicial notice of facts . . . may be used to supplement the pleading." *AEG Opp.* 5:15–16. Specifically, Plaintiff contends that it is "common knowledge" that venue owners and operators have contractual agreements with performers prohibiting conduct in violation of the law and that it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | | Date | April 2, 2019 |
|---|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | | |

"nearly universally required" for the performer to provide copyright clearances. *Id.* 5:18–25. However, these "common sense" facts specific to an industry are not proper subjects for judicial notice. The Court, having no experience in organizing concert performances, cannot say that such contractual requirements are generally known within the jurisdiction or that they can be accurately and readily determined from sources whose accuracy cannot reasonably questioned. *See* Fed. R. Evid. 201; *see also Salz v. Standard Ins. Co.*, 554 F. App'x 600, 603 (9th Cir. 2014) (holding that "common sense" intuition that "an individual acting in a managerial capacity would be able to change his positioning as needed in order to avoid discomfort" was not judicially noticeable). And even if the Court were to accept that Defendants had knowledge, Plaintiff has still not alleged any facts to support his claim that the Defendants somehow "induced" or "caused" the infringing acts.

In sum, the Court finds that the 4AC does not adequately allege that any of the AEG Defendants, Live Nation Defendants, and the Academy are liable for contributory copyright infringement.

### iii. *Vicarious Copyright Infringement*

For a defendant to be liable for vicarious copyright infringement, it must have "(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Visa*, 494 F.3d at 802. To meet the first requirement, a plaintiff must establish that the defendant had "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Amazon.com*, 508 F.3d at 1173–74. A "direct financial interest" may be demonstrated where "the availability of the infringing material acts as a draw for customers." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (quotation marks omitted). "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).

Again, Plaintiff faces the same problem here as before: he relies on conclusory statements and fails to present any factual allegations to support his cause of action. *See 4AC* ¶¶ 83, 88, 93 (alleging that the defendants "are vicariously liable . . . because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct"). He attempts to support his conclusory allegation that the MTD Defendants had the right and practical ability to supervise the infringing conduct by recycling his "common sense" facts regarding how venues purportedly operate, which the Court has already rejected.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

Further, Plaintiff has offered only conclusory statements that the MTD Defendants had a direct financial interest in the Manilow's infringing activity. This deficiency is even more pronounced against the Academy. Plaintiff alleges that the Academy "monetarily benefited, both directly and indirectly," from Manilow's infringing activity at the "2016 Grammy Awards pre-party," but fails to put forward any factual allegations in support. *See Academy Opp.* 8:4–5. There has been no suggestion that Manilow, much less Manilow's inclusion of the clips from the Show, was a "draw for the customers." *See Napster, Inc.*, 239 F.3d at 1023. To the contrary, Plaintiff even concedes in his opposition brief that "Manilow's performance did not draw in the audience per say [sic] . . . ." *Academy Opp.* 9:21. Accordingly, the Court finds that Plaintiff has failed to state a claim for vicarious copyright infringement.

As Plaintiff has failed to state a claim for either contributory or vicarious infringement against the AEG Defendants, Live Nation Defendants, and the Academy, the three motions to dismiss are all **GRANTED**.

        iv.     *Leave to Amend*

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

The MTD Defendants all urge the Court not to grant leave to amend for Plaintiff's secondary copyright infringement liability claims, because he has already had numerous opportunities to amend his pleading. However, Plaintiff has not had the benefit of the Court's analysis with respect to the secondary liability claim until now. And the Court cannot say that amendment would be futile, because Plaintiff may be able to add factual allegations to support his conclusory statements. Although the Academy argues that any amendment to raise a claim against it would be futile, its arguments are based on newspaper articles that are not proper subjects for judicial notice. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." (internal quotation marks omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

As such, the Court **GRANTS** Plaintiff leave to amend as to the secondary liability claims *only*. Any amendment must be filed no later than **April 30, 2019** or the secondary liability claims will be dismissed with prejudice.

  B. Motion for Preliminary Injunction

Plaintiff seeks the Court to issue a preliminary injunction "compelling the Trust Defendants to withdraw the Termination Notice and further enjoin[ing] the Trust Defendants from engaging in acts in which they unlawfully assert an ownership interest in the copyright." *PI Mot.* 25:15–18. He asserts that he has met all four prongs of the *Winter* test: (1) he is likely to prevail in this case; (2) he will suffer irreparable harm without an injunction because he will be prevented from capitalizing on the unique opportunities created by renewed interest in Judy Garland in 2019, the fiftieth anniversary of Garland's death; (3) the balance of hardships weighs in favor of Plaintiff, and (4) issuance of an injunction is in the public interest. *See generally PI Opp.*

The preliminary injunction that Plaintiff seeks has two components. The first part, which asks the Court to compel the Trust Defendants to withdraw the Termination Notice, is a mandatory injunction that requires affirmative conduct by the Trust Defendants. The latter part, which seeks an injunction preventing the Trust Defendants from asserting ownership interest in the copyright, is a prohibitory injunction that restrains the Trust Defendants from taking further action. The Court will address each portion of the requested preliminary injunction in turn.

    i. *Mandatory Injunction*

The first factor under *Winter*—likelihood of success on the merits—is the most important. "Because it is a threshold inquiry, when 'a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* factors.]'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)). Where the moving party is seeking a mandatory injunction, the burden of demonstrating the merits of the case is "doubly demanding." *Id.* Because a mandatory injunction "goes well beyond simply maintaining the status quo *pendent lite* [and] is particularly disfavored," *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal citations omitted), the Ninth Circuit instructs district courts to deny such relief "unless the facts and law *clearly favor* the moving party," *Dahl v. HEM*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

*Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (emphasis added).[3] Here, the Court finds that Plaintiff has failed to meet its burden of demonstrating that the facts and law "clearly favor" his position to warrant a mandatory injunction.

Plaintiff devotes the bulk of his motion to arguing that the Trust Defendants' Notice of Termination is defective. *See generally PI Mot.* The Trust Defendants do not respond to Plaintiff's arguments, other than to point out that there were motions to dismiss pending on the issue of whether Plaintiff adequately alleged that the Show was a work made for hire. *See PI Opp.* 11:1–12:9. Arguments to which no response is supplied are deemed conceded. *See, e.g.*, *Tapia v. Wells Fargo Bank, N.A.*, No. CV 15-03922 DDP (AJWX), 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015); *Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011). Accordingly, the Court deems the Trust Defendants' failure to respond as a concession that Plaintiff to the facts and law "clearly favor" Plaintiff's position that the Notice of Termination is defective.

However, that is not the end of the analysis. The Trust Defendants challenge Plaintiff's standing for bringing a copyright infringement claim in the first place, arguing that Plaintiff cannot establish the chain of title to establish his ownership of the Show's copyrights. *See PI Opp.* 6:5–8. Many of these arguments were raised in the Trust Defendants' previous motion to dismiss. *See Motion to Dismiss the Third Amended Complaint*, Dkt. # 31-1. First, the Trust Defendants point out that Plaintiff is not listed as the owner of any of the copyrights. *PI Opp.* 6:15–22. The Court has already rejected this argument, because a copyright registration is only a rebuttable presumption and "does not definitively resolve the ownership issue." *MTD Order* at 8 (quoting *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1096 (N.D. Cal. 2002)).

Second, the Trust Defendants contend that Luft, from whom Plaintiff purportedly acquired the copyrights, never owned copyrights to the show in the first place. *PI Opp.* 6:24–9:2. The 4AC alleges that on April 1968, Garland and Luft entered into a letter agreement that purportedly transferred all of her interest in Kingsrow, which owned the copyrights, to Luft. *4AC* ¶ 43. The Trust Defendants contest the authenticity of the letter and allege that it is a forgery. *PI Opp.* 7:6–8. And even if the letter is authentic, the Trust Defendants argue that it did not effect a legal transfer of the Kingsrow shares to Luft, because under New York law at the

---

[3] The Court does not apply the "serious questions" standard for the purposes of the motion, as it appears inconsistent with the Ninth Circuit's guidance that mandatory injunction should not be issued "unless the facts and law clearly favor the moving party." *See P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1126, 1135 (C.D. Cal. 2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

time, the letter merely qualified as a lien on Garland's Kingsrow shares and Luft never took steps to foreclose on it. *Id.* 7:12–8:11. The Trust Defendants contend that, after Garland died, Luft would have had to assert a claim against Garland's estate during the probate proceedings to obtain the Kingsrow shares, and therefore the copyrights, but he did not do so. *Id.* 8:12–19.

Plaintiff counters that there is no substantial evidence that the 1968 letter was a forgery, because Luft has established the validity of the Letter Agreement in sworn testimony made during an unrelated suit and because the declarations of Garland's children stating that Garland's signature on the letter was forged are "inherently suspect." *PI Reply* 4:10–6:7. Further, Plaintiff argues that it does not matter that Luft did not follow the proper procedures to foreclose on the alleged lien under New York law, because as a good faith purchaser of the copyrights, Plaintiff acquired ownership of those rights free and clear of any interest Garland or her heirs may have had in the collateral (the ownership interest in Kingsrow which held the Show's copyrights). *Id.* 9:1–14. Moreover, Plaintiff asserts that there was no need for Luft to participate in the probate proceedings because the copyrights to the show were not part of Garland's estate at that point—they were already with Luft. *Id.* 10:13–11:4. In support, Plaintiff points out that Garland's estate was valued at only $51,662.60 at the time of the probate proceedings and argues that if the estate had included the Show's copyrights, its valuation would have been much higher. *See id.*

The Court cannot conclude on this record that the facts and the law "clearly favor" Plaintiff on these issues. First, there remains the question of whether the agreement was a forgery—a question the Court is unable to assess at this point, as both parties have put forward contradicting sworn statements regarding the authenticity of the document. Second, if the letter was not an absolute transfer but a collateral assignment, Plaintiff does not clearly explain to the Court how Luft would have been able to obtain the copyrights to sell to Plaintiff in the first place. Further, the Court is not persuaded by Plaintiff's argument that Garland's estate "clearly" did not include the copyrights to the show because, if it did, the estate would have been valued at more than it was, without any factual support for how much the copyrights would have been valued at during the probate proceedings.

The Trust Defendants further argue that, even if Luft somehow obtained ownership of Garland's Kingsrow shares, Luft gifted 75 percent of the shares to his children and therefore did not have the authority to unilaterally transfer or sell the copyrights held by Kingsrow to himself. *PI Opp.* 9:3–10. Plaintiff asserts that because the other Kingsrow shareholders were completely silent while Luft publicly represented himself as owning the Show, Luft was vested with apparent authority to sell the copyrights to Plaintiff. *PI Reply* 12:3–14. However, the sole basis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

for Plaintiff's contention is his self-serving affidavit that relies on his "independent research, information obtained from biographies . . . , biographers . . . , and [his] direct discussions with Sid Luft." *See Declaration of Darryl Payne*, Dkt. # 66-2, ¶ 6.  Although the potential evidentiary issues do not render his affidavit inadmissible, the Court is certainly wary of putting much weight on it.  Therefore, the Court again cannot conclude that the law and facts clearly favor Plaintiff's position.

Given these outstanding legal and factual issues, Plaintiff has not met his "doubly demanding" burden of showing that the law and facts in this case *clearly favor* his position.  *See Garcia*, 786 F.3d at 740.  Because Plaintiff cannot meet the first *Winter* prong on this standard, the Court **DENIES** Plaintiff's motion for a mandatory injunction requiring the Trust Defendants to withdraw the Termination Notice.

> ii.     *Prohibitory Injunction*

The second part of Plaintiff's requested preliminary injunction asks the Court to enjoin the Trust Defendants from "engaging in acts in which they unlawfully assert an ownership interest in the copyright." *PI Mot.* 25:16–18.  Specifically, Plaintiff asks the Court to enjoin and restrain the Trust Defendants "from directly or indirectly using, copying, broadcasting, making available on the Internet, distributing, licensing or otherwise authorizing any other person or entity to use, broadcast, upload to the Internet, copy, distribute or otherwise make available for distribution to the public" any portion of the Show.  *Proposed Order*, Dkt. 66-5, ¶ 2.  Because this is a prohibitory injunction, Plaintiff is not subject to heightened standard under the mandatory injunction.  Even so, the Court **DENIES** Plaintiff's motion because he cannot demonstrate the second *Winter* prong—that a failure to impose this prohibitory injunction would lead to irreparable harm on Plaintiff.

In order to obtain a preliminary injunction, the plaintiff "must establish that irreparable harm is likely, not just possible." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011).  "There must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined[.]"  *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011)).

Plaintiff contends that he will be irreparably harmed without a preliminary injunction because 2019 is the fiftieth anniversary of Garland's death "which, from a marketing point of view, should 'spike' interest in the Show but only for a limited time." *PI Opp.* 22:15–16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3413 PSG (PLAx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Darryl Payne v. Barry Manilow, et al. | | |

Plaintiff asserts that he is unable to profit from the potential increase in the market's interest in the Show because of the Termination Notice. Plaintiff also points to recent, concrete examples of his business plans being interrupted due to the Notice of Termination. *See id.* 22:18–23:16. However, although these injuries may qualify as "irreparable harm," they were caused by the Notice of Termination, and therefore cannot be cured by an injunction preventing Trust Defendants from exploiting the copyrights.

Plaintiff has not otherwise described any irreparable harm that would result if the Court does not grant a preliminary injunction preventing the Trust Defendants from utilizing the copyrights. Plaintiff makes no mention of any ongoing efforts by the Trust Defendants to license or otherwise use the Show. Without an imminent threat that Trust Defendants are doing so, and a showing that Plaintiff would be irreparable harmed by the Trust Defendants' competing efforts to market the show, a preliminary injunction is inappropriate.

Accordingly, the Court **DENIES** Plaintiff's motion for a preliminary injunction as it pertains to the requested prohibitory injunctions.

### iii. Conclusion

In sum, the Court **DENIES** Plaintiff's motion for a preliminary injunction in full.

## IV. Conclusion

For the foregoing reasons, all three motions to dismiss are **GRANTED**. Plaintiff is **GRANTED** leave to amend the secondary liability claims only. Any amendment must be filed no later than **April 30, 2019** or those claims will be dismissed with prejudice.

Plaintiff's motion for preliminary injunction is **DENIED**.

**IT IS SO ORDERED.**